**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEILA MACK, | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| AMERICAN CUSTOMER CARE, | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Keila Mack (hereinafter "Plaintiff"), by and through her attorneys, Koller Law, LLC, bring this civil matter against American Customer Care (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Lansdowne, PA.

3. Upon information and belief, Defendant American Customer Care is an outsourcing and offshoring consultant with a location at 948 Plaza Drive, Suite 1, Montoursville, PA 17754 and corporate headquarters located at 400 Executive Boulevard South, Floor 1,

Southington, CT 06489.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant has one or more locations which it operates within this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the ADA and PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on November 19, 2025, alleging race and disability discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2026-01265 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated March 6, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.

21. In or around April 2023, Defendant hired Plaintiff in the position of Customer Service Agent.

22. Plaintiff was well qualified for her position and performed well.

23. In or around October 2023, Defendant promoted Plaintiff to Email Support.

24. Plaintiff was well qualified for her position and performed well.

25. In or around January 2024, Defendant promoted Plaintiff to Chat Support.

26. Plaintiff was well qualified for her position and performed well.

27. Plaintiff worked remotely from her residence in Lansdowne, PA.

28. Defendant was aware Plaintiff worked remotely from her residence in Lansdowne, PA.

### PLAINTIFF'S NEW SUPERVISOR BEGAN TO DISCRIMINATE AGAINST HER DUE TO HER RACE

29. In or around March 2024, James Gority (Caucasian), became Plaintiff's new supervisor.

30. Upon becoming Plaintiff's supervisor, Gority proceeded to launch a campaign of discrimination against Plaintiff due to her race.

31. Under Gority's supervision, Plaintiff's quality scores inexplicably and dramatically fell from the 80-90% range into the 50-60% range.

32. Plaintiff noticed that her calls were not being randomly selected for review but were deliberately chosen to highlight trivial issues.

33. Plaintiff complained to Gority and Nichole Daniel, Supervisor, about this manipulation of her quality scores, but no corrective action was taken.

34. In addition, Gority frequently nitpicked Plaintiff's work product and scheduled her lunch break to be significantly delayed.

## DEFENDANT EFFECTIVELY DEMOTED PLAINTIFF

35. Prior to Gority's campaign of discrimination and harassment, Defendant had Plaintiff training new employees in Chat and Email Support.

36. However, without justification, Defendant's "workforce management" supervisory committee; a supervisory committee which included Gority, Daniel, Jeri Shoemaker (Supervisor), Michele Steyers (Program Manager), and Jane Brione (Supervisor), abruptly stripped Plaintiff of these training responsibilities in or around November 2024.

37. Defendant relegated Plaintiff solely to Phone Support, effectively demoting Plaintiff as this was a position of lesser status

38. Meanwhile, Defendant continued to allow newly hired Caucasian employees to remain on Email and Chat Support.

39. Plaintiff's work quality had remained consistently high, and there were no performance-based reasons for her demotion.

40. Rather, upon information and belief, this disparate treatment was motivated by Plaintiff's race.

## DEFENDANT ASSIGNED TWO (2) NEW CAUCASIAN FEMALE EMPLOYEES ADDITIONAL CHAT RESPONSIBILITIES, BUT DID NOT OFFER THE SAME RESPONSIBILITITES TO PLAINTIFF

41. Plaintiff also observed that two (2) new Caucasian female employees who were initially placed on Phone Support were nevertheless assigned additional Chat responsibilities due to their mental health.

42. Importantly, the two (2) Caucasian female employees were transferred after being publicly combative with supervisors in team chat.

43. Defendant transferred the two (2) Caucasian female employees to the Chat Support roles, so that they did not have to engage with other coworkers and would not have their Quality scores affected.

44. Plaintiff, by contrast, was denied the same opportunities.

## PLAINTIFF COMPLAINED ABOUT THE DISPARATE TREATMENT AND NOTIFIED DEFENDANT OF HER DISABILITY

45. On or about February 6, 2025, Plaintiff complained to Shoemaker and Daniel that being on Phone Support all day was negatively impacting her mental health.

46. Plaintiff disclosed that she had been diagnosed with Major Depressive Disorder, General Anxiety Disorder and Agoraphobia, approximately nine (9) years earlier and that the conditions of her assignment exacerbated the symptoms of her disability.

47. Major Depressive Disorder is a serious health condition that is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

48. Plaintiff's major life activities affected by Major Depressive Disorder, include, but are not limited to, sleeping, communicating, and working.

## DEFENDANT TERMINATED PLAINTIFF

49. The very next day, on or about February 7, 2025, Brion called Plaintiff and terminated her employment.

50. During the call, Brion stated that Plaintiff was a liability, or words to that effect, but did not provide any additional justification or reasoning for Plaintiff's termination.

## DEFENDANT PROVIDED A DIFFERENT REASON FOR PLAINTIFF'S TERMINATION

51. Defendant later informed Plaintiff its purported reason for her termination was that she had allegedly been rude to a customer.

52. Defendant then changed the purported reason for Plaintiff's termination to a claim that she had allegedly failed to follow policy by not transferring an irate customer to a supervisor.

53. In reality, the customer had harassed Plaintiff by questioning her pay rate and speaking to her in a condescending manner.

54. Plaintiff was not argumentative and was not rude to the customer.

55. Plaintiff followed proper procedure by promptly notified multiple supervisors of the situation, who failed to respond for over five (5) minutes.

56. Despite following the proper procedure, Defendant terminated Plaintiff.

57. Defendant's shifting reasons for Plaintiff's termination demonstrate that the stated reasons for termination are nothing more than pretext for discrimination based on race and/or disability and/or retaliation for engaging in protected activity.

58. Defendant discriminated against Plaintiff due to her race and/or disability(ies), failed to accommodate her disability(ies), and retaliated against her for reporting the aforementioned discrimination and requesting a reasonable accommodation in violation of Title VII, the ADA and the PHRA.

59. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

60. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

61. Plaintiff is a member of protected class in that she is African American.

62. Plaintiff was qualified to perform the job for which she was hired.

63. Plaintiff suffered adverse job actions, including, but not limited to termination.

64. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

65. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

66. Defendant discriminated against Plaintiff on the basis of her protected class.

67. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

68. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

69. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISCRIMINATION BASED ON RACE
## PENNSYLVANIA HUMAN RELATIONS ACT

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (African American).

8

72. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

73. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

74. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

75. Plaintiff was qualified to perform the job.

76. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

77. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

78. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

79. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

80. The purported reason for Defendant's decision is pretextual.

81. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

82. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

83. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

84. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE PENNSYLVANIA HUMAN RELATIONS ACT

85. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

86. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

87. Plaintiff was qualified to perform the job.

88. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

89. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

90. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

91. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

92. The purported reason for Defendant's decision is pretextual.

93. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

94. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

95. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

96. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

97. Plaintiff engaged in activity protected by Title VII as described herein.

98. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

99. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

100. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

11

101. Plaintiff engaged in activity protected by the ADA as described herein.

102. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

103. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT VII – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

104. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

105. Plaintiff engaged in activity protected by the PHRA as described herein.

106. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

107. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Keila Mack, requests that the Court grant her the following relief against Defendant:

(a)     Damages for past and future monetary losses as a result of Defendant's unlawful employment practices;

(b)     Compensatory damages for non-economic losses as a result of Defendant's unlawful employment practices including, *inter alia*, emotional pain and suffering

and/or harm to reputation and/or mental anguish;

(c)    Punitive damages;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and/or termination; and

(i)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 4, 2026        **By:**  */s/David M. Koller*
           David M. Koller, Esquire
           Jordan D. Santo, Esquire
           2043 Locust Street, Suite 1B
           Philadelphia, PA 19103
           215-545-8917
           davidk@kollerlawfirm.com
           jordans@kollerlawfirm.com
           *Counsel for Plaintiff*